31 C.C.P.A.(Patents)

## In re SHEA.

### Patent Appeals No. 4898.

Court of Customs and Patent Appeals.
June 19, 1944.

C. P. Goepel, of New York City (Raymond J. Mawhinney, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for Commissioner of Patents.

Before BLAND, Acting Presiding Judge, and HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 4, 5, 6, and 11 in appellant's application for a patent for an alleged invention relating to pen nibs.

At the time of the oral arguments in this court, counsel for appellant moved to dismiss the appeal as to claims 4, 5, and 6. The motion will be granted. This leaves for our consideration claim 11. It reads:

"11. In a steel pen having a writing tip of wings extending substantially at right angles from the longitudinal axis of the pen in substantial parallelism from the face of the pen, with the tip rounded at the back of the pen, the contours [contours] of the free ends of the wings being in contact and smooth and round, both of said wings forming a body symmetrically oval in shape with the blunter curvature of the oval at the free end of the pen with masses of consolidated metal at the free ends of the wings and at the rounded back, the writing surfaces having the hardness of cold forged steel."

The references are: Kepner, 818,258, Apr. 17, 1906; Henwood, 2,001,726, May 21, 1935; Bartol, 2,121,542, June 21, 1938; Shea, 2,195,430, Apr. 2, 1940.

It will be observed that claim 11 calls for a writing tip of a steel pen having wings extending substantially at right angles from the longitudinal axis of the pen and in substantial parallelism from the face of the pen. The particular features in the claim which are relied upon for patentability over the references are set forth in the following quotation: "the contours [contours] of the free ends of the wings being in contact and *smooth and round,* both of said wings forming a body *symmetrically oval in shape with the blunter curvature of the oval at the free end of the pen* with masses of consolidated metal at the free ends of the wings and at the rounded back, *the writing surfaces having the hardness of cold forged steel."* (Italics ours.)

In his statement to the board, the Primary Examiner, among other things said:

"These references [the references of record] clearly illustrate nibs with wing tips in substantial parallelism as stated in the claims.

"Bartol and Shea (2,195,430) are described as having parallel nibs and the Shea nib wings are oval * * * and shaped precisely as in this application.

"No patentable weight can be given to having the nib wings of a hardness corresponding to that of cold forged steel. Such is a matter of choice whether heat treated metal or any other type which might produce the equivalent hardness. Cold forging is the primary means of shaping metal when it can be done to advantage.

"The smoothing and rounding features are mere mechanical expedients for all metal goods.

\* \* \* \* \*

"The broad features of a U-shaped pen tip with parallel wings is covered in ap-

plicant's patent (2,195,430) and the method of making the article in this application is confined to Serial No. 321,218, filed Feb. 28, 1940 of which this case is a division. At any rate, no novelty is seen in the article as claimed in this application for the reasons above."

In affirming the decision of the examiner, the Board of Appeals, among other things, said:

"We note that Shea states in his specification that his pen has a tip portion closely resembling the iridium point of gold pens and has substantially all the advantages thereof yet being made of stainless steel by an inexpensive method of manufacture.

"Appellant's main argument in the present application is the same. *The shape of the ball at the end of the pen is slightly different from that shown by the patentee but we are not convinced that this difference warrants the allowance of a second patent in view of the prior art for reasons given by the examiner.*" (Italics not quoted.)

The board also stated that appellant had suggested the substitution of a new claim which, the board said, was slightly different from those on appeal. The board refused to consider that claim, because it had not been before the Primary Examiner. (It may be stated at this point that although it is claimed in the reasons of appeal that the board erred in refusing to consider the new claim, that issue is not argued in appellant's brief.)

█ The board was clearly within its rights in refusing to consider a claim which had not been before the Primary Examiner.

In a request for reconsideration of the board's decision, it was stated that claim 11 had apparently been ignored by both the Primary Examiner and the Board of Appeals; that that claim called for the pen point to be "symmetrically oval," that is, both "longitudinally and transversely"; that the prior art does not disclose such a symmetrically oval pen point; that an oval-shape pen point is important in that both upper and lower surfaces have the same contour "so that when either side [of the pen point] is used for writing, it is exactly alike and thus interchangeable in use"; that appellant's improved pen has masses of metal at the free ends of the

wings and at the rounded back; that this concentration of metal is a result of the combined pressure and sliding action of the dies, as disclosed in appellant's application; that the consolidated metal hardens the pen point at the writing surfaces; and that the hardness of the writing surfaces of the pen is brought about by a cold-forged molding process, as stated in appellant's application.

The board denied appellant's request for reconsideration, stating that claim 11 did not define a structure which was patentably distinguishable over the structure disclosed in the Shea patent.

The patent to Shea (appellant) discloses a pen point or nib which, as stated, in substance, by the Board of Appeals, is not exactly oval in contour. The patentee's pen point is bent in such manner, as stated in the patent, as "to provide a lower heel or back so as to enable the pen point to be used both front or back for two way writing." The patentee states that "The invention consists in a new pen point which is formed by first bending up the lips in V shape, and thereafter completing the bending operation *to the finally desired configuration* in a manner that no area of metal is between the lips when bent to final shape." (Italics ours.) The V-shape bent portions of the patentee's structure are subjected to a flattening pressure so as to bring them closely in contact and parallel with each other. It is stated in the patent that by bending the metal of the wings from their V-shape position closely together "a flow of the metal during this bending action causes the wings to move downwardly" forming the so-called "heel" at the lower portion of the pen point. The patentee emphasizes that his pen point has the hardness of steel; that the point is rounded; that the tip portion closely resembles the iridium point of gold pens; and that it has substantially all the advantages of the iridium tip.

It is contended by counsel for appellant that none of the references, including the patent to Shea, discloses an oval-shape pen point; that, although the pen point disclosed in the Shea patent may seem smooth, it does not have the smoothness of a point that has been smoothed by pressure; that, being symmetrically oval, appellant's pen point has masses of consolidated metal at the free ends of the wings and at the rounded back which is the re-

sult of cold-forged molding, a process which also hardens and smooths the pen point; that the cold-forging process more nearly equalizes the pressure throughout the area of the wings and thus overcomes the undue stress and strain which results from the process disclosed in the Shea patent in which the wings of the nib are bent at least twice, thus weakening the pen point; and that by the cold-forged molding appellant has been successful in forming a hard and brittle molybdenum stainless steel pen point and one that is equally as durable as the iridium tip gold pen point.

It is true that the pen point claimed in appellant's present application is not exactly the same as that shown in the Shea patent, and it may be a better pen point. Nevertheless, it is stated in the Shea patent, as hereinbefore noted, that the V-shape pen point could be completed by the bending operation "to the finally desired configuration." Hence, it is indicated in the patent that any desirable configuration, oval or otherwise, could be made by the process therein disclosed. Accordingly, we are of opinion that the oval configuration of the pen point does not involve invention.

Counsel for appellant also argues that the prior art does not disclose that both wings or tabs have masses of consolidated metal at their free ends and at the rounded back.

That feature is described in appellant's patent, as hereinbefore noted.

We have given careful consideration to all of the arguments presented here by counsel for appellant, but are unable to hold that the Board of Appeals was in error in rejecting claim 11 on the patent to Shea.

It may be said in conclusion that most of the arguments presented here by counsel for appellant in support of the patentability of claim 11 relate to the process of making appellant's pen point.

The process of making appellant's pen point is not an issue before us but, according to the Primary Examiner, is claimed in a division of appellant's present application.

The appeal is dismissed as to claims 4, 5, and 6, and the decision of the Board of Appeals rejecting claim 11 is affirmed.

Affirmed.

GARRETT, P. J., did not participate in the consideration or decision of this case.